# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANA GWYN COGBURN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-10-103-RAW-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Jana Gwyn Cogburn requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on November 30, 1968, and was forty years old at the time of the administrative hearing. She has a high school education and completed a year of college (Tr. 27). The claimant has held a number of full and part-time jobs, including fast-food worker, retail sales clerk, cafeteria worker, newspaper delivery person, update clerk for a car repossession company, industrial seamstress and plastic press operator, but her past relevant work is as a dispatcher for a cable company (Tr. 160). The claimant alleges she has been unable to work since April 1, 2007, because of bilateral carpal tunnel syndrome, back pain, hypertension, depression, and anxiety (Tr. 55-56).

**Procedural History**

On September 17, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ John W. Belcher conducted a hearing and determined that the claimant was not disabled in a decision dated June 3, 2009. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, she could lift/carry 10 pounds frequently and 20 pounds occasionally, and stand/walk/sit for 6 of 8 hours in a work-day, but was limited to occasional fingering or fine manipulation, occasional keyboarding, no power gripping, no torquing or twisting, occasional flexing and extending her hands and wrists, and only limited contact with the public (Tr. 15). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a dispatcher, or in the alternative, because she could perform other jobs in the national economy, *i.e.*, arcade attendant, cafeteria attendant, and toll booth attendant (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider all the medical evidence and the combined effects of her impairments; (ii) by failing to properly analyze her credibility; (iii) by finding that she could return to her past relevant work as a dispatcher; (iv) by failing to properly assess her RFC; and (v) by failing to fully develop the record. The undersigned finds the claimant's second and fifth contention persuasive.

The medical evidence reflects claimant began receiving treatment at the Stigler Health & Wellness Center on March 22, 2007, where her diagnoses were noted as organic anxiety syndrome, essential hypertension, allergic rhinitis, and carpal tunnel syndrome, and the claimant was prescribed paxil, toprol, atenolol, depo medrol, and

allegra at that time (Tr. 204-05). On June 21, 2007, claimant was noted to be anxious and defensive, and her medications were changed to celexa, atenolol, lovastatin, paxil, hydrochlorothiazide, and doxycycline (Tr. 197). On March 17, 2008, Joseph Bennett, P.A. wrote that claimant's carpal tunnel syndrome was worsening, and she was noted to have "chronic pain in [her] hands and wrist" which the claimant was self-treating by wearing splints at night (Tr. 243). Dr. Linda Rodriguez, D.O. wrote that claimant had a "history of carpal tunnel bilaterally" and that her grip strength was decreased in her left hand and wrist (Tr. 256). Claimant was referred to a neurologist in November 2008, where EMG testing revealed that claimant's carpal tunnel was resulting in moderately severe median neuropathy, with the left median nerve "more severely affected compared with the right" (Tr. 262). Claimant thereafter underwent surgery so that a carpal tunnel release could be performed on her left wrist on December 19, 2008; she later underwent a carpal tunnel release procedure on March 10, 2009 on her right wrist (Tr. 251, 255).

A Psychiatric Review Technique was performed by state reviewing psychologist Dr. Laura Lochner, Ph.D. on October 16, 2007, and she concluded that claimant's anxiety disorder was not severe (Tr. 206). She found that claimant had mild restriction of activities of daily living, but no difficulties in either maintaining social functioning or maintaining concentration, persistence, or pace (Tr. 216). Dr. Lochner's findings were confirmed by state reviewing psychologist Dr. Ron Smallwood, Ph.D. (Tr. 228-41).

State reviewing physician Dr. Penny Aber, M.D. found on October 17, 2007 that claimant had the physical residual functional capacity to occasionally lift 20 pounds,

frequently lift 10 pounds, stand/walk for about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and an unlimited capacity for pushing and pulling (Tr. 221).  In her notes, Dr. Aber wrote that claimant showed limitations in handling and that she could not perform repetitive gripping of hand controls, but neither of these limitations is denoted in the RFC assessment (Tr. 222).

The claimant testified at the administrative hearing that just prior to filing for disability benefits, she had worked at a fast food restaurant but had to quit because she was dropping things and crushing cups because the numbness in her hands prevented her from ascertaining how much pressure to apply for grasping (Tr. 36).  She also testified at the administrative hearing that she is unable to cook because her "hands will go tingly and numb" and she has pain in her wrists.  (Tr. 28).  In addition, she is unable to perform household chores which require her to grasp or put pressure on her wrists, and she can no longer carry grocery bags.  (Tr. 29).  Whereas she used to be able to type 85 words per minute, she stated that she can now only type for about five minutes at a time (Tr. 30). The claimant also testified that she had recently had surgery on both wrists to correct her carpal tunnel syndrome, but that she still experienced numbness, tingling, and weakness in her wrists.  The claimant said that when she attempts to "grip or keep [her] hand . . . in the same position," it causes her to have pain in her wrists.  (Tr. 34).  At the time of the administrative hearing, it had only been approximately two months since she had had her second surgery for carpal tunnel syndrome.  She stated that she had been unable to follow up with her surgeon as of that date because she doesn't "have enough money to go to the

doctor all the time" (Tr. 32). However, she stated that her surgery has helped with some of the numbness, but that she still has pain in her wrists (Tr. 36).

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

In this case, the ALJ's analysis of the claimant's credibility regarding her carpal tunnel syndrome consisted of the following:

> In terms of the claimant's carpal tunnel syndrome, the claimant testified that prior to the carpal tunnel release surgeries she had pain and numbness in her hands. The record reflects a gap between March 17, 2008 and October 28, 2008 during which time the claimant did not seek treatment. The absence of prescribed treatment and medication for carpal tunnel syndrome detracts from the claimant's credibility. The claimant described that since having surgery she still has wrist pain, difficulty holding heavy items and performing chores. The surgeon noted the claimant was pleased with the improved sensation in her hands post surgery.

(Tr. 17). This analysis is flawed for two reasons. First, the ALJ discounted the claimant's credibility about the limiting nature off her condition before her operations because she failed to take treatment for a seven-month period, but failed to consider her testimony that she could not afford treatment. *See Miranda v. Barnhart*, 205 Fed. Appx. 638, 642 (10th Cir. 2005) ("'[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.'"), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7; *Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("[T]he ALJ failed to comment on the important evidence that treatment was inconsistent because of Mrs. Thomas's apparent inability to afford the medications. . . . Whether a person is being consistently treated with available medication is important probative information.").

Second, the ALJ discounted the claimant's testimony about the limiting nature of her condition after her operations because at some point she told the surgeon that she was pleased with the improved sensation in her hands. But aside from this isolated comment, there was no medical evidence to contradict the claimant's testimony that she was still having post-surgery issues; the only evaluations pertaining to claimant's RFC were done over *one year prior* to claimant's carpal tunnel surgery and contained no restrictions on the claimant's manipulative abilities (Tr. 220-27). Although the ALJ has broad latitude in deciding whether or not to order consultative examinations, *see Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human*

*Services*, 898 F.2d 774, 778 (10th Cir. 1990), under the circumstances it was "within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled as by ordering easily obtained further or more complete reports or requesting further assistance" from a consultative examiner able to take into account the claimant's surgeries and her subsequent condition before dismissing her credibility in this regard. *Hawkins,* 113 F.3d at 1169.

Because the ALJ failed to properly analyze claimant's credibility and to order a consultative examination in support thereof, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proceedings. If on remand any adjustments are made to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

As set forth above, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 14th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma